United States v. Crawford, number 124937. May it please the Court, my name is John Bryson. I practice in High Point with Wyatt Early Harris Wheeler and I'm representing the defendant Donovan Crawford. This is an appeal from a conditional guilty plea from the Middle District of North Carolina. There are two issues on appeal. One, the denial of defendant's motion to suppress where defendant challenged the affidavit supporting a search warrant for his residence. And also, the second issue is the court's determination that the defendant met the criteria for career offender. I intend to address the sentencing issue first. This issue concerns whether the defendant had the two requisite prior violent felonies for career offender. Factually, what happened was the defendant was arrested on one day and charged with a misdemeanor offense under North Carolina law, assault on a female. About three weeks, he's released on bond. About three weeks later, he's arrested again. This time he's charged with other offenses. The second time he's arrested, there are charges that do qualify as violent felonies for career offender. He is indicted in April, a couple of months later, and when he's indicted, the prosecutor indicts him not only for the felonies that occurred in the second arrest, but they take the misdemeanor offense where he's arrested initially and they elevate it to a felony charge under North Carolina law, assault inflicting serious bodily injury. The following year, he enters a guilty plea to both felonies out of the felony from the first arrest, which was elevated in the indictment process, and felonies from the second arrest. And the question is whether or not there is an intervening arrest. Essentially, what turns on whether or not these are counted separately or counted as one offense, because they were all entered as guilty pleas on one day, is the interpretation under the guideline for A1.2 as to whether or not they're counted separately. And basically, it turns on whether or not there is an intervening arrest. The competing positions are, we contend that he's initially arrested for a misdemeanor offense, and so when he's arrested for the second offense, that's not the intervening arrest because you don't have a qualifying offense when he's initially arrested. When he's indicted for these offenses, that's when he's charged with a qualifying offense, but there's no intervening arrest because he was simply indicted under the same case file that he was originally charged with. So there's no intervening arrest between the first arrest for a qualifying offense and the second charge for a qualifying offense. There's no precedent in the circuit for this. We have emphasized the language of the guidelines itself, where it talks about being arrested for the first offense. I've also cited the Dean case, which is on page 20 and 21 in our brief. I would concede this is dicta. Mr. Barrett indicated that this was dicta. Truly, the Dean case is not factually on point, and I acknowledge that. At the same time, it was the only case I could find that was even close in this jurisdiction on the issue, and the language is, at least, supportive of my position. The government is citing and relying on the court. Below did rely on the Seventh Circuit decision of U.S. v. Coleman, which is cited on page 21 of our brief. In Coleman, you have a defendant who is in a similar situation. He was arrested for two possessory drug offenses, I believe in August and December of the same year. They were possessory offenses, so they would not have qualified as career offender predicate offenses. When he was indicted, subsequently, the prosecutor upgraded them to, I believe, possession with intent to distribute, which would be qualifying offenses under career offender. He also, like the defendant, pled guilty on the same day to both of those offenses. He made the same argument that I'm making here, and that is there was no intervening arrest  and adopted a rule that was based primarily on looking at the conduct of the defendant rather than the charge of the offense. I distinguish Coleman in two regards. One is, we don't really have enough facts to know. It just says he was charged initially with possessory offenses. We don't know if they were misdemeanor offenses or whether they were felony offenses. I can't tell you whether that would have made a difference to the Seventh Circuit or not, but it clearly is something that's out there and causes me concern. The other thing I think that is distinguishing in Coleman is, in Coleman, I believe it was Illinois was the jurisdiction, the charges were brought by law enforcement, whereas here in North Carolina, the charges are issued by a judicial official, a magistrate. And I would say that is a distinction. Why is that a distinction with a difference? Well, I think that when you have a neutral, detached magistrate looking at the facts of the case and making a decision of the case, I do think that gives more credence to the validity of what the initial charge is. And I want to talk about the distinction between . . . But the initial charge was changed, so . . . How does that strengthen . . . Well, I think it goes to whether or not it's changed because of a change in the facts or a change in a decision as to how to prosecute the case. And let me . . . You know, I'm just wondering, though, Mr. Bryson, isn't the rationale behind application of these principles really that you don't load up on to straighten up and reform their conduct? In other words, if the two offenses occur without . . . pretty much at the same time, or if there hasn't been a situation where a defendant is given the benefit of the doubt, but when a defendant goes out and is arrested, commits a crime, then goes out and commits another crime and is arrested for that crime, you have a different situation, don't you, in terms of overall culpability? Isn't that kind of the rationale underlying . . . Yes, it is. I don't disagree. Yes. That is, in fact, if you read the Coleman case, it talks about someone who didn't mend their ways. And I don't disagree with that. And we don't have a mend their ways situation here, do we, under the fact . . . No. No, we didn't. But I think what we're talking about is when to apply a very serious enhancement. And I think when you're evaluating this prior conduct and whether it's worthy of this very serious enhancement, I think you have to look at several things. One is when the Coleman decision discounts the concept of notice. And I do think that notice is important. If we're going to look at his conduct and say he didn't mend his ways, and therefore he's going to get this enhanced punishment, I do think it's important to look at not only what he did, but what he knew and understood at the time. And this defendant walked out of the courthouse on January 20, 2009, believing he was charged with a simple misdemeanor offense. And that encouraged him to commit further crime . . . No, but I . . . . . . in a way that wouldn't have if he had been charged with a felony. I do . . . if I . . . let me . . . okay. If I'm driving home today and I get a speeding ticket on the way home, I might continue to speed again. But if I get a speeding ticket and I'm told by the officer, you know, if you ever get another speeding ticket again, you will lose your license permanently for the rest of your life, I will probably be a lot more careful in my conduct. And I would suggest to you that that's the argument that I would make in terms of what I emphasize is . . . in the Coleman decision, they're emphasizing the conduct. And I think it discounts the power of a prosecutor in just deciding what the charges will be. On pages 22 and 23 of my brief, I gave a couple examples in North Carolina law where identical conduct can be charged either as a felony or misdemeanor. And it's solely in the unfettered discretion of the prosecutor. Now, you might say, well, that's not what we have here. And I would at least beg to argue that point, if I may. North Carolina has different graded levels of assault. You have a simple assault, which is a Class 2 misdemeanor. You then have higher levels of assault. And one here that we're dealing with is assault on a female. That's what we call a Class A1 misdemeanor. It's higher than a Level 2. You also have assault inflicting serious injury. That is not a felony. That is also a Class A1 misdemeanor. And in the government's brief, it points out that in this warrant, it says, charges him with assault on a female, but it notes that she had a broken jaw. The victim had a broken jaw. And I want the court to know, it was not a mistake that the magistrate charged him with a misdemeanor and not a felony. Assault inflicting serious injury is a misdemeanor offense under North Carolina. And in these facts, he could have charged him with assault on a female. He could charge him with assault inflicting serious injury. These are both A1 misdemeanors, but you don't get to a felony by having both of those elements. Now, what ultimately happened was, he was charged with assault inflicting serious bodily injury. That is actually a relatively new statute in North Carolina. It was enacted in 1996. And serious bodily injury is defined as bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent protracted loss or impairment of the function of any bodily member, organ, or organ, or that results in prolonged hospitalization. Now, if you look at the indictment in this case, it doesn't specify any of those underlying facts. So, we don't really know whether any of those facts were actually present in the case. We certainly, you know, and there's not enough information in the pre-sentence report to know whether those facts are present. But that charge was certainly brought based on that allegation. So, I do question whether this is a situation where it was the defendant's conduct or a prosecutor's determination to, as you know, because he had come back as a repeat offender. I also, in talking about, excuse me, in emphasizing the defendant's conduct in this case, I also think in an assault case where you don't have a deadly weapon, what a defendant actually does is not necessarily always, excuse me, the resulting injury is not always predictive of what the behavior itself is. And I made reference in brief to what I learned in law school as the eggshell plaintiff, which I don't think I've actually discussed that since my first year in law school. But, you know, the idea is that you strike somebody in one way and some person suffers no injury. You strike another person in the exact same way and they suffer catastrophic injury. And so, I do think concentrating on the conduct in this case is not something that we would like to see the court do. We think that you should look at what the charge of defense is, follow the statute, excuse me, follow the guideline language, and not follow the Coleman decision. I've got two minutes and I can't really do justice to the argument on . . . We've preserved it. You don't lose it by not arguing. No, I understand that. But I wanted to briefly talk about the search warrant issue and it's very factually based. But I've got two minutes. Let me go ahead and just say this about the search warrant. The search warrant, we contend, does not supply probable cause. And if you look at the search warrant, there's an introductory paragraph, paragraph five, where the officer makes all sorts of statements and they're completely undated. We don't know when they happened. The main thrust, I think, of the search is this. They go on a specific day, August 9th, and at that time, we don't know whether they actually did a knock and talk and actually searched the residence or whether they attempted to do a knock and talk and search the residence. But when they're leaving, they do a trash pull. And then they go and get a search warrant and come back the following day with a search warrant. And I think the best evidence for the government that there is probable cause to search here is from the trash pull. And my complaint with the trash pull is this. Based on this search warrant, you don't know whether or not they had just searched the house the day before. Because you don't know when this stuff occurred in the undated allegations from paragraph five. And while ordinarily, I would agree that a trash pull, where they find paraphernalia and I think a small amount of cocaine, would suggest that there's drugs in the house. If you just searched the house the day before and you didn't find anything, if there's evidence of a trash pull, that suggests that maybe they just cleaned up the day before rather than that there's still drugs there. Um, there's well, I'll save the rest of my time. Thank you very much. Thank you. Barrett. May it please the court. I'm Cliff Barrett representing the United States in this case. Your honors, I would urge the court to adopt the holding in Coleman and the rationale in Coleman. Mr Bryson's already summarized the facts of that case. But I think two of the important quotes from the case are that the defendant places too much weight on the arrest. Arresting officers original characterization of the offenses. And Mr Bryson, I know during his argument, said one of the things that in his favor was that perhaps law enforcement brought the enhanced charges rather than the prosecutor's office. And I think that points out kind of the impracticality, uh, of that. Um, the prosecutor ultimately decides whether to submit the matter to a grand jury for more serious charges. And I think for that reason that that language in Coleman is important. The Coleman court also said once the defendant's been arrested, he's been arrested for all the charges that might be filed related to his his conduct. Um, for that reason, I would urge the court to follow to follow Coleman. I think the facts in our case are very similar to the facts in that case. Um, the notice issue that Mr Bryson talked about, um, just a couple of responses to that. There's no notice required for any kind of criminal history calculation. And I would I would urge the court not to graft that requirement on to the criminal history section of the guidelines. The defendant in this case, the court is familiar with the facts of the two assaults. They're both fairly brutal assaults. Uh, the first assault occurred on January 13th was charged on the 20th. But the argument is that the defendant could still mend his ways. He knows from the warrant, which is in the joint appendix that he's broken the victim's jaw. He's released. He then has further contact with her approximately three weeks later, and on that occasion slams her to the ground. I think she has a bloody head and bloody mouth and has some loose teeth as a result of that. So nothing stops him from ending his ways as a result of the initial offense. The other thing that's a little bit lost in all of this is that for years, this court held that assault on a female was a crime of violence. Uh, before the change in structured sentencing, it was a very serious offense. And we had I know the court has seen many defendants who have been held to the career offender guideline simply for the other point. Mr Bryson raised was that the defendant is charged with a misdemeanor, and then at some point is charges converted to a felony. The defendant always has an opportunity to obviously defend himself against charges. In this particular case, the prosecutor, after after meeting apparently with the officers after reviewing the evidence, determined it was a felony assault, not a misdemeanor assault and charges in that fashion. The grand jury returned bills of indictment. The defendant had an opportunity to defend himself and chose to plead guilty. So it's not. It's not some type of unfair surprise that he would plead guilty to this offense. The practical application of of any other rule, your honors, I would suggest would be difficult because it would force the court to basically find that it has to be offensive conviction in order, which is, I believe, what Mr Bryson is asking the court to do for an offense to count as a career offender predicate is a crime of violence in this particular case. Um, and that's extremely difficult in that the initial officers, for whatever reason, a variety of reasons, local officers don't charge the correct defense, don't charge a serious enough offense, don't charge an offense, which a grand jury later determines is based upon the evidence. Uh, and for that reason, uh, we would urge the court again to follow, uh, to follow the Coleman case. Yeah, your honors. As to the other issue, I would just, uh, just say briefly, we would again urge the court to affirm the district court. Uh, district court had a significant, uh, took significant time to review the search warrant and to make findings. And I would also say that the case is virtually identical to the Monteith case, which is a published case in this court in 2011. I think the last well, there's been one other published trash pool case, but uh, that's the last trash pool published case, which addresses these facts. And for that reason, the district court found probable cause and applied to good faith exception. We would urge this court to do the same. Thank you very much. Thank you. Mr Bryson, do you have any rebuttal? Sure. I'd like to use my time just to talk about, um, since you did talk about the search warrant case, just to talk a little more about the search warrant. Um, in your discussion, could you address Monteith? Yes. Um, and I think, um, I don't, I don't, I don't take issue with Monteith. Okay. I think that you have a factual distinction between this case and Monteith. I think that in an ordinary situation, you go out to somebody's house, you suspect they're involved in drugs, you do a trash pull, you find that there's drugs. I think that gives you the, I think that is probable cause, uh, to, to, for issuance of a search warrant. I don't have a problem with Monteith. What I have a problem with in this case is as I read this search warrant, it says to me, and I noted in, in, uh, in my brief and it's in the court transcript when we showed up for to argue this, all three of us had a actually occurred as a result of the affidavit. And in our interpretation, what happened is they go to his house on august 9th. They do a knock and talk. Uh, they don't find anything when they're leaving. They do a trash pull. Uh, subsequent to that, they get this information from this officer Massey from another, um, Sheriff's Department, Person County Sheriff's Department. Um, and on the basis of that information, what they get from Sergeant Massey and the trash pool, they then get a search warrant and go back the very next day. And my complaint with the trash pull is because they just searched the house the prior day finding paraphernalia, small amount of drugs in the trash that day, it doesn't tell them that there's drugs in the house. It very well much tells them that they cleaned up and got rid of everything before they got there. So I don't think a trash pool immediately following a search that was unsuccessful and didn't find anything doesn't yield probable cause to search again. That's that's the gist of what I want to say. And there's, you know, there's a factual question. We could, we can all read this affidavit and come up with different things. Can I just make a few points about why I contend that there was only one knock and talking and that is, um, it's referred to at some point in paragraph five as it says that the department conducted the knock and talk, not a knock and talk. It's referred to as the knock and talk. And also, uh, the court interpret, uh, interpreted there being a prior knock and talk and then coming back on august 9th and doing an attempted knock and talk. And that he theorized that the defendant wasn't there and there were, so there was a prior knock and talk and there was an attempted knock and talk. Um, one, I don't have a problem with that if it was the day before, as long as that prior knock and talk is in close proximity to the trash pool. I go back to my original position. I don't, I don't think that really gives you probable cause if the prior knock and talk is in very close proximity to the trash pool. And we don't know that because the information in paragraph five is completely undated. We have no idea even if you accept the court's version. The reason I think there's only one knock and talk is, uh, on paragraph at seven, it says the investigator, um, determined, uh, they ran his driver's license and determined that his residence is, was it, uh, 10 23 Da Vinci street. Well, in the prior paragraph says they went to the knock and talk at his house and he was there. Clearly they would not have had to run his history and find out where he lived if they previously done a knock and talk at his residence and he was there. So I think, uh, I think that, um, that the trash pool is not like it is in Monteith because they just searched the house and they didn't find anything. And I think the other information that's provided by the sergeant from the person, county sheriff's department is conclusory. Uh, and so essentially you're left with the fact that he's on probation. Um, and that, um, and that there were bullet holes found on, on the outside of the house, which they acknowledged could be old. Um, so we contend that there isn't probable cause. We also, because of the conclusory statements, contend that the good faith exception doesn't apply. Uh, and, and in the Wilhelm case, uh, it bare bones affidavit is one that relies on holiery conclusory statements. Thank you very much. We will go down and
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker